## S07A1741. TURNER v. THE STATE.
(655 SE2d 589)

BENHAM, Justice.

Appellant Larry Shane Turner was tried on an indictment charging him with the malice murder, felony murder (with aggravated assault being the underlying felony), and aggravated assault of Shawn Moss Kelley.[1] Appellant admitted having fired the shot that killed the victim, but maintained he acted in self-defense. The jury returned a verdict of not guilty on the malice murder charge, expressly finding pursuant to the jury verdict form supplied to it that appellant had been justified in his action. The jury went on to find appellant guilty of felony murder and aggravated assault after expressly finding pursuant to the jury verdict form that appellant's act of shooting the victim was neither justified nor mitigated.[2]

---

[1] The fatal shooting took place on December 23, 2004. Appellant was arrested the same day and was charged in a true bill of indictment filed on July 19, 2005. The trial commenced on May 8, 2006, and concluded on May 12 with the jury's return of its verdicts and the imposition of a sentence of life imprisonment on the felony murder conviction and a concurrent 20-year term of years for the aggravated assault conviction. Appellant's motion for new trial was filed June 9, 2006, and was denied January 3, 2007. A notice of appeal was filed January 31, 2007, and the appeal was docketed in this Court on July 31, 2007. It has been submitted for decision on the briefs.

[2] The verdict form gave the jury the following options: "**Count 1 – MURDER** 'We, the jury, find that the defendant's conduct was justified and find the Defendant **NOT GUILTY** of **MURDER** with Malice Aforethought.'" This statement was followed by the signature of the jury foreman. The verdict form continued: "**Count 2 – FELONY MURDER** 'We, the jury, find

The State presented evidence the victim, the former boyfriend of appellant's sister and a life-long friend of appellant, died as the result of a shotgun wound to his left upper arm that traversed his chest, cutting the ascending aorta and causing massive internal bleeding. Appellant and his father arrived at the scene shortly after police arrived and appellant was arrested after informing the officers he had shot the victim. A GBI agent testified he interviewed appellant who told him the victim had telephoned the home of appellant's sister on December 21 while appellant was visiting and had threatened to kill her. Appellant took the telephone, told the victim to stop calling his sister, and threatened to kill the victim should he do physical harm to appellant's sister. The victim called the home of appellant's sister the following day and told a male visitor he was going to beat up the visitor. Appellant refused to take the male visitor to the site specified by the victim for a confrontation; instead, believing the victim would be armed, appellant got his shotgun from his home and went to the site where he sat in his car and awaited the victim's arrival. The victim arrived and approached appellant who fired his shotgun when he saw the victim, standing 10-12 feet away and slightly turned away from appellant with his hands in his front pockets, move his right arm.

Appellant testified he fired the fatal shot in self-defense because the victim had earlier threatened to kill him and he believed the victim was reaching for a gun with which to shoot him. The police discovered the victim's body with his hands in his front pants pockets, and no firearm was on or near the victim's body. However, a solid metal cylinder was in a front pants pocket and a padlock was on the

---

that the defendant's conduct was justified and find the Defendant **NOT GUILTY** of **FELONY MURDER'** " and "**Count 3 – AGGRAVATED ASSAULT** 'We, the jury, find the defendant's conduct was justified and find the Defendant **NOT GUILTY** of **AGGRAVATED ASSAULT.**' " The foreman did not sign either of the signature lines following these statements. The second page of the verdict form had "VOLUNTARY MANSLAUGHTER" as its heading, followed by two statements ("We, the jury, find the presence of mitigating circumstances and find that the defendant is **NOT GUILTY** of Voluntary Manslaughter" and "We, the jury, find the presence of mitigating circumstances and find that the defendant is **GUILTY** of Voluntary Manslaughter"), and two signature lines, neither of which bore the foreman's signature. The third page of the jury verdict form stated: "**Count 1 – MURDER** 'We, the jury, find the defendant's conduct was not justified, that there are no mitigating circumstances present and that the Defendant is **GUILTY** of **MURDER** with Malice Aforethought' " with a blank signature line. "**Count 2 – FELONY MURDER** 'We, the jury, find the defendant's conduct was not justified, that there are not mitigating circumstances present and that the defendant is **GUILTY** of **FELONY MURDER.**' " This statement was followed by the foreman's signature. The third page of the verdict form concluded with: "**Count 3 Count 2 – AGGRAVATED ASSAULT** 'We, the jury, find the defendant's conduct was not justified, that there are no mitigating circumstances present and that the defendant is **GUILTY** of **FELONY MURDER.**' " The last two words were scratched out and replaced with the hand-printed words "Aggravated Assault," followed by the foreman's initials and the date. The amended statement was followed by the foreman's signature.

middle finger of his right hand in his front pants pocket. Appellant's father testified the victim had a weapon with him about 85 percent of the time and carried a rifle "continuously." He described the precautions he and appellant had taken on behalf of themselves and appellant's sister because they feared she was in danger at the victim's hands after the victim and appellant's sister parted ways. Several weeks before the shooting, appellant's father had insisted the victim leave the property on which were situated the homes of appellant, his sister, and his father. Telephone records introduced at trial showed 69 calls had been made two days before the shooting to the home of appellant's sister from a phone at the house where the victim lived; 71 phone calls had been placed the day before the shooting, and 14 calls had been made the day of the shooting.

1. Appellant maintains the trial court gave an improper sequential charge to the jury. A sequential charge is improper when it eliminates the jury's full consideration of voluntary manslaughter and its concomitant mitigating factor of provoked passion prior to the jury's consideration of felony murder. See *McNeal v. State*, 263 Ga. 397 (2) (435 SE2d 47) (1993). It is improper to direct a jury to consider voluntary manslaughter only after finding the defendant not guilty of felony murder. *Jackson v. State*, 267 Ga. 130 (12) (475 SE2d 637) (1996). There is no improper sequential charge when the jury is informed it cannot find a defendant guilty of felony murder unless it has determined there are no mitigating factors that would reduce malice murder to voluntary manslaughter. *Sellers v. State*, 277 Ga. 172 (3) (587 SE2d 35) (2003). The trial court instructed the jury it first had to determine whether the defendant's conduct was justified. If it concluded the conduct was justified, the jury was to acquit appellant on each charge. If, on the other hand, the jury determined the conduct was not justified, before it would be authorized to return a guilty verdict on the malice murder or felony murder charges, the jury had to determine whether any mitigating evidence would cause the malice murder or felony murder charges to be reduced to voluntary manslaughter. If the jury determined the defendant's action was neither justified nor mitigated, then the jury would be authorized to find the defendant guilty of malice murder or felony murder. Inasmuch as the jury was informed it could not find appellant guilty of felony murder or malice murder unless it had determined there were no mitigating factors that would reduce malice murder to voluntary manslaughter, there was no improper sequential charge. Id.

2. Appellant maintains the trial court erroneously accepted mutually exclusive verdicts — the determination he was not guilty of malice murder because his action was justified, and the determination he was guilty of felony murder because his action was not justified. However,

> "[v]erdicts are mutually exclusive 'where a *guilty verdict* on one count logically excludes a *finding of guilt* on the other.' " [Cits.] Thus, the rule against mutually exclusive verdicts applies to multiple guilty verdicts which cannot be logically reconciled; the rule is not implicated where, as here, verdicts of guilty and not guilty are returned. [Cit.]

*Shepherd v. State*, 280 Ga. 245 (1) (626 SE2d 96) (2006).

While appellant's assertion of error speaks in terms of mutually exclusive verdicts, the basis of his argument is that the verdicts are inconsistent. In *Milam v. State*, 255 Ga. 560 (2) (341 SE2d 216) (1986), this Court abolished the rule that inconsistent verdicts in irreconcilable conflict in criminal cases warranted reversal (see *Hines v. State*, 254 Ga. 386, 387 (329 SE2d 479) (1985)), adopting the rationale set out by the U. S. Supreme Court in *United States v. Powell*, 469 U. S. 57 (105 SC 471, 83 LE2d 461) (1984), in its exercise of supervisory powers over the federal criminal process. Id. at 65. In *Powell*, the Court noted that inconsistent verdicts could be the result of jury mistake, compromise, or lenity, but it is unknown whether the mistake, compromise, or lenity was exercised in favor of the defendant or the prosecution. Id. In our cases endorsing the abolition of the inconsistent verdict rule, we have determined it is not generally within the court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts. *Dumas v. State*, 266 Ga. 797 (2) (471 SE2d 508) (1996). As we observed in *King v. Waters*, 278 Ga. 122 (1) (598 SE2d 476) (2004), appellate courts "cannot know and should not speculate why a jury acquitted on . . . [one] offense and convicted on . . . [another] offense. The reason could be an error by the jury in its consideration or it could be mistake, compromise, or lenity. . . ." Stated another way, it is

> imprudent and unworkable . . . [to] allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that the courts generally will not undertake.

*United States v. Powell*, supra, 469 U. S. at 66; *Smashum v. State*, 261 Ga. 248 (2) (403 SE2d 797) (1991).

We have, however, recognized an exception to the abolition of the inconsistent verdict rule: when instead of being left to speculate

about the unknown motivations of the jury the appellate record makes transparent the jury's reasoning why it found the defendant not guilty of one of the charges, "[t]here is . . . no speculation, and the policy explained in *Powell* and adopted in *Milam*, supra, . . . does not apply." *King v. Waters*, supra, 278 Ga. at 123. As was the case in *King v. Waters*, we are faced with the anomalous situation in which we need not speculate whether the jury verdict is the product of lenity or of legal error. The jury verdict form makes it clear the jury determined appellant was not guilty of malice murder because the jury found his action in shooting the victim to have been justified. Because the rules regarding inconsistent verdicts are not applicable to the case at bar, we are presented with the question of whether the jury's finding of justification as to the malice murder charge requires vacation of the judgment entered on the guilty verdicts returned on the charges of felony murder and aggravated assault.

The jury was instructed that "[t]he fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct." OCGA § 16-3-20. The trial court twice instructed the jury it was to consider first whether or not the defendant's conduct in shooting the victim was justified and, if the jury determined the conduct was justified, the jury should acquit the defendant as to each count. All the crimes for which appellant was tried were based on his conduct of shooting the victim and the jury found that conduct to have been justified. As both OCGA § 16-3-20 and the trial court's repeated instruction to the jury make clear, the jury's finding of justification as to the malice murder count applies to the felony murder and aggravated assault charges based on the same conduct. In light of the jury's express finding of justification, it was error for the trial court to enter judgment on the jury verdicts finding appellant guilty of felony murder and aggravated assault.

*Judgment reversed. All the Justices concur, except Carley and Thompson, JJ., who dissent.*

CARLEY, Justice, dissenting.

I agree with the majority that the verdicts in this case are not mutually exclusive, since the jury acquitted Appellant of malice murder and found instead that he was guilty of felony murder during the commission of aggravated assault. See *Shepherd v. State*, 280 Ga. 245, 248 (1) (626 SE2d 96) (2006). Verdicts which find a defendant not guilty of malice murder, but guilty of felony murder, are entirely consistent. I also believe that the majority correctly holds that Appellant's enumeration of error actually is predicated on the inconsistent verdicts rule, which was abolished by this Court in *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986). "The *Milam* ruling

stands for the proposition that a defendant cannot attack as inconsistent a jury verdict of guilty on one count and not guilty on a different count. [Cit.]" *Dumas v. State*, 266 Ga. 797, 799 (2) (471 SE2d 508) (1996). However, I disagree with the majority's conclusion that the prohibition against challenging verdicts as inconsistent does not apply here. I submit that the rule established by *Milam* is clearly applicable to the verdicts in this case, and demands an affirmance of the judgment and sentence entered on the jury's finding that Appellant was guilty of felony murder. Therefore, I respectfully dissent.

Abolition of the inconsistent verdicts rule rests on "the principle that it is not generally within the trial court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts. [Cit.]" *Dumas v. State*, supra. "The reason could be an error by the jury in its consideration or it could be mistake, compromise, or lenity, but as a matter of prudence, the conviction . . . should be upheld so long as the evidence will support it. [Cit.]" *King v. Waters*, 278 Ga. 122, 123 (1) (598 SE2d 476) (2004). The majority concludes that the prohibition against a defendant's reliance on the inconsistent verdicts rule does not apply here because

> we need not speculate whether the jury verdict is the product of lenity or of legal error. The jury verdict form makes it clear the jury determined [A]ppellant was not guilty of malice murder because the jury found his action in shooting the victim to have been justified. . . . [T]he jury's finding of justification as to the malice murder count applies to the felony murder and aggravated assault charges based on the same conduct.

Majority opinion, p. 21. What the majority fails to acknowledge expressly, however, is that, with regard to the malice murder count, the verdict form *only* provided the jurors with the opportunity to return a not guilty verdict based upon the defense of justification. As footnote 2 of the majority opinion indicates and as a review of the attached copy of the verdict form clearly shows, the jury was *not* given the option of finding that Appellant was not guilty of malice murder because he did not act with malice aforethought or for any reason other than justification. Thus, it is obvious from a consideration of the totality of the verdict form, rather than its isolated elements, that the two verdicts were not the product of the jurors' own inconsistent determination that his act of shooting the victim was and was not justified. Instead, it is unquestionably the result of the verdict form which erroneously limited their determination of whether Appellant

was not guilty of malice murder to a finding on the issue of justification. If the jury found that he was guilty of felony murder, but not guilty of malice murder, it was required to signify the latter finding by adopting the verdict form's unnecessary specification of justification as the reason.

Thus, I agree that there is no need to speculate why the jury returned the inconsistent verdicts in this case. However, contrary to the majority's analysis, the inconsistency is without doubt the result of the "legal error" exemplified by the incomplete and confusing verdict form itself. As the majority concedes, *Milam*'s prohibition against reliance on the inconsistent verdicts rule extends to a case, such as this, in which the verdict which the defendant challenges on appeal may be the product of error or mistake. Compare *King v. Waters*, supra at 122 (inconsistency not based on mistake or error, but on "an appellate or a habeas corpus court's ruling"). Here, the error or mistake in the verdict form was waived by Appellant when he did not object and acquiesced in its submission to the jury. See *Jones v. State*, 279 Ga. 854, 860 (7) (a) (622 SE2d 1) (2005). The anomalous effect of the majority opinion is to permit Appellant to convert his waiver of the error or mistake in the verdict form into a basis for evading *Milam*'s prohibition against asserting the inconsistency of verdicts. The absence of speculation as to the reason why the jury returned inconsistent verdicts should not obviate the holding in *Milam*, if that non-speculative reason is one of the very grounds cited in that decision as support for adoption of a prohibition against a defendant's reliance on the inconsistent verdicts rule. The inconsistent verdict rule was abolished because the inconsistency could be the result of a mistake or an error. I do not see the logic in reviving the rule when mistake or error is, in fact, the explanation for the inconsistency.

A "defendant is entitled to the benefit of the doubt in the construction of an ambiguous verdict ([cit.]) . . . ." *Lindsey v. State*, 262 Ga. 665, 666 (1) (424 SE2d 616) (1993). Here, however, the verdicts are not ambiguous, but inconsistent as to whether the jury found that the shooting was or was not justified. The trial court instructed the jury to consider whether Appellant's conduct was justified and, if it found that it was, to acquit him on all counts. If we presume, as we must, that the jurors followed the trial court's charge, then they would have acquitted him on all counts if they found that the shooting was justified. However, instead, the jury found him not guilty only on the malice murder count. The verdict form did not provide the jury with a chance to return a verdict which found that Appellant was not guilty of malice murder even though the shooting was unjustified. Having found that he was guilty of felony murder during the commission of an unjustified aggravated assault, the jury could express its finding that he was not guilty of malice murder only by completing

that part of the verdict form which specified justification as ground for acquittal of that offense. Under these circumstances, I do not believe that Appellant can benefit from his acquiescence in the submission of an erroneous or mistaken verdict form which made it impossible for the jury to return consistent findings that, although the shooting was unjustified, he was guilty of felony, but not malice, murder.

> [W]here truly inconsistent verdicts have been reached, "(t)he most that can be said . . . is . . . that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." [Cit.]

*United States v. Powell*, 469 U. S. 57, 64-65 (105 SC 471, 83 LE2d 461) (1984) (cited with approval in *Milam v. State*, supra).

The evidence is sufficient to authorize a rational trier of fact to find proof beyond a reasonable doubt that Appellant was guilty of felony murder during the commission of an unjustified aggravated assault. Thus, the trial court did not err in entering the judgment of conviction and life sentence on the verdict of guilt as to that offense. The trial court did, however, err in entering a judgment of conviction and concurrent 20-year sentence on the verdict of guilt on the separate count of aggravated assault. *Bolston v. State*, 282 Ga. 400, 401 (2) (651 SE2d 19) (2007). Therefore, I dissent to the reversal of the judgment in this case, and believe that it should be affirmed in part and vacated in part. *Bolston v. State*, supra.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED JANUARY 8, 2008 —
RECONSIDERATION DENIED JANUARY 28, 2008.

*David L. Smith, Leonard M. Geldon*, for appellant.
*Donald N. Wilson, District Attorney, Charles D. Gafnea, Assistant District Attorney, Thurbert E. Baker, Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.